■ DELORES PERSICO STAVOLA, Respondent, v ST. EUPHROSINIA OF POLZAC MISSION, Also Known as ST. EUPHROSINIA OF POLAZAC MISSION, Appellant, et al., Defendant. [41 NYS3d 787]—

Egan Jr., J.P. Appeal from an order of the Supreme Court (Schick, J.), entered September 25, 2015 in Sullivan County, which, among other things, partially granted plaintiff's motion for summary judgment.

Plaintiff and defendant St. Euphrosinia of Polzac Mission (hereinafter defendant) own neighboring properties in the Town

of Lumberland, Sullivan County that were acquired from a common grantor—an entity known as The Bel-Air, Inc. The parcel owned by defendant, which defendant acquired in June 2010, was a former resort property (consisting of a hotel, restaurant, pool, caretaker's cottage, outbuilding and well) that had been owned and operated by Bel-Air in the 1950s. In 1959, Bel-Air conveyed a portion of its land to Richard Miles and Ludmila Miles (plaintiff's predecessors in title). The resulting deed contained a rider governing "a strip of land running south from Lebanon Road and alongside the eastern boundary of the . . . described premises to a well which was adjacent to the southeast corner of said premises, which strip of land (herein-after the 'well property') [was] retained by [Bel-Air] and constitute[d] all of the land owned by it immediately to the east of the said premises." Paragraph No. 1 of the rider granted the Mileses a right of first refusal in the event that Bel-Air decided to sell the well property; paragraph No. 2 of the rider granted the Mileses "the right to purchase the well property at the reasonable market value thereof as fixed by an appraiser appointed by the Sullivan County Association of Real Estate Brokers" in the event that Bel-Air "cease[d] to use the well located upon the well property." The rights and obligations of the parties to the 1959 deed were binding upon their respective heirs, successors and assigns.*

Plaintiff acquired her parcel from Ludmila Miles and the executor of her former husband's estate in August 1999. Thereafter, by letter dated July 26, 2012 (nearly 13 years after acquiring her parcel of land and two years after defendant acquired its adjoining parcel), plaintiff notified defendant of her intent to purchase defendant's property in accordance with paragraph No. 2 of the rider to the 1959 deed—contending that defendant had ceased to use the well located upon its property. When defendant refused to convey the well property, plaintiff commenced this action seeking, among other things, to compel the sale thereof. Following joinder of issue, plaintiff moved for summary judgment, and defendant cross-moved for similar relief. Supreme Court partially granted plaintiff's motion, finding that plaintiff had established—as a matter of law—that defendant had ceased using the well located upon its property,

---

* The 1959 deed and accompanying rider appears in plaintiff's and defendant's respective chains of title, and defendant does not dispute that it is bound by the provisions thereof. That said, we note in passing that the rights granted by Bel-Air to the Mileses in the 1959 deed/rider are not universally referenced in each of the subsequent conveyances contained in defendant's chain of title—specifically, no mention of such rights is made in the 2010 deed by which defendant, as successor in title to Bel-Air, acquired its parcel.

thereby triggering plaintiff's right to purchase the premises. Supreme Court also denied defendant's cross motion for summary judgment, and this appeal by defendant ensued.

Preliminarily, the parties debate the proper interpretation to be accorded to the word "ceases" as that term is used in paragraph No. 2 of the rider. Defendant equates "ceases" with "abandons," arguing that any interruption in its use of the well must be accompanied by an intent to forever discontinue such use, while plaintiff contends that "ceases" literally means "stops"—essentially taking the position that any temporary cessation in defendant's use of the well would trigger her right to purchase the subject property. The merits of the parties' respective arguments aside, we note that nothing on the face of the rider to the deed requires that defendant's use of the well be continuous. Had the parties to the 1959 deed/rider intended to impose such a requirement, they surely would (or at least could) have employed language to that effect. Hence, it strikes us that defendant cannot be divested of its fee interest in the well property based solely upon a transient or temporary period of disuse.

In support of her motion for summary judgment, plaintiff, who acknowledged in her bill of particulars that she had "no personal knowledge as to [when defendant] last used the well," primarily relied upon the fact that defendant did not have the allegedly necessary state or local permits to operate the well. However, any lack of the required permits, while certainly relevant to establishing whether defendant's use of the well was legal and/or otherwise was in compliance with the applicable rules and regulations, in no way speaks to the issue of whether the subject well was in fact being used. In other words, defendant may have been operating the well illegally, but the lack of a permit does not establish that the well had in fact ceased to be used. Although plaintiff also relied upon correspondence from defendant's counsel, which indicated that the well was—as of the time of such writings—either inoperable or temporarily not in use, such proof, in our view, fails to establish—as a matter of law—that defendant had in fact "cease[d] to use the well" for purposes of triggering plaintiff's right to purchase the subject property.

Even assuming, without deciding, that the foregoing proof was sufficient to discharge plaintiff's initial burden on her motion for summary judgment, we are satisfied that defendant's proof in opposition raised a question of fact as to defendant's use of the well. In this regard, defendant submitted various affidavits, including one from its president, attesting to defend-

ant's ongoing repair efforts and use of the well subsequent to its purchase of the property in June 2010. Specifically, defendant's president averred that, within approximately two weeks of acquiring the property, parishioners and others undertook to repair the then inoperable well, and "[w]ater began pumping from the well." A series of leaks in the pipelines followed and, "[a]fter the water lines were replaced and the well pump was repaired[, defendant] began using the water to slowly fill up the . . . pool on the property." An additional leak was discovered and further repairs were undertaken, but the local building inspector subsequently told defendant that it "could not use the pump" because he did not believe that it was in compliance with the applicable building codes. Defendant's president nonetheless averred "that the well in fact was and is being used" and that "work on the well" was ongoing—an assertion echoed in the affidavits submitted by four of defendant's parishioners, each of whom disputed plaintiff's claim that defendant had ceased using the well. As "it is not clear at this juncture that the qualifying conditions" relative to plaintiff's right to purchase the property were triggered (*450 W. 14th St. Corp. v 40-56 Tenth Ave.*, 298 AD2d 113, 114 [2002]), Supreme Court should have denied plaintiff's motion for summary judgment in its entirety. In light of this conclusion, we need not address the remaining arguments raised by defendant.

Rose, Clark, Mulvey and Aarons, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted plaintiff's motion; motion denied in its entirety; and, as so modified, affirmed.